■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WINSTON MINGO, Respondent.—Order of the Supreme Court, New York County (Norman Ryp, J.), entered on July 3, 1984, which held that the People had failed to show probable cause for defendant's arrest and granted the motion to suppress evidence derived therefrom, is unanimously reversed, on the law and the facts, the motion denied and the matter remanded for further proceedings.

At 12:45 P.M., on December 30, 1983, undercover Officer

Carlos Gonzalez purchased narcotics in front of the building at 334 East 100th Street. In the radio message which he transmitted to his backup team, parked some two blocks away, Officer Gonzalez described the seller as a dark-skinned Hispanic man, 5 feet, 8 inches in height, weighing 150 pounds and wearing a brown coat with a gray hood, who was standing on 100th Street between First and Second Avenues. Within minutes of the report, the backup officers caught sight of defendant, who is black but otherwise matched the description in question. However, instead of being on the south side of the street, as stated by Officer Gonzalez, he was on the north side, almost directly across the street in front of 336 East 100th Street. Defendant was thereupon placed under arrest by Officer Joseph Gallagher, searched, and $165 in cash was removed from his pocket. The undercover officer subsequently identified him as the seller of the narcotics.

Officer Gallagher was the sole witness at the suppression hearing. At the conclusion thereof, the court granted defendant's motion to suppress the money recovered from him. According to the court, the "presumption of probable cause to arrest favoring the receiver/arresting officer was removed when defendant challenged the reliability of the sender/undercover officer, and the burden of coming forward to show probable cause was thereby imposed upon the People." (125 Misc 2d 373, 379.) In that connection, the court apparently found (People v Petralia (62 NY2d 47), to be inapplicable to the instant matter in that "substantial issues" had been raised concerning whether Officer Gallagher possessed the requisite probable cause to arrest defendant. The court then specifically identified four issues which it characterized as "substantial": (1) the fact that the undercover officer had described the seller as a dark-skinned Hispanic, and defendant was a black man; (2) the fact that the undercover officer claimed that the sale had occurred on the south side of East 100th Street, while defendant was arrested on the north side; (3) the lack of concrete details regarding the reliability of the undercover officer; and (4) the fact that the prosecution had failed to establish that the buy money was among the currency taken from defendant. We disagree.

In People v Petralia (supra, p 52), the Court of Appeals held that although there may be situations prior to trial in which the existence of "substantial issues" requires that the People produce the undercover officer or make him available to the defendant "a per se rule requiring that he appear in every instance, as the defendant urges here, is unwarranted and

could jeopardize the officer or his usefulness in pending or future investigations." As the Court of Appeals explained in *Petralia,* a case also involving a typical buy-and-bust operation, the basis for the arrest therein was not information received from an unknown source of unknown reliability but was provided to the arresting officer by another officer on the narcotics team who had personally witnessed the defendant commit the crime just prior to the radio transmission. Since the facts in *Petralia* are not significantly distinguishable from those in the present matter, that case is determinative.

It should, moreover, be noted that defendant has not presented any "substantial issues relating to the validity of the arrest, the resolution of which could be aided by requiring the People to produce the undercover officer or by making him available to the defendant." *(People v Petralia, supra,* at p 52.) Following his purchase of cocaine, Officer Gonzalez radioed a detailed description of the seller to the backup team. He also stated that the suspect was standing on 100th Street between First and Second Avenues. Two or three minutes later, Officer Gallagher arrived on East 100th Street and spotted an individual who matched that description almost precisely. Indeed, there was no contention at the suppression hearing that defendant did not fit the description. The mere fact that defendant was black rather than a dark-skinned Hispanic, or that he was discovered across the street from the location given by the undercover officer, is scarcely sufficient to create "substantial issues" mandating the presence of Officer Gonzalez at the hearing.

Certainly, there was sufficient evidence to establish a lawful arrest. The information provided of the seller's physical appearance and the location where the transaction took place was specific and detailed and included a distinctive item of clothing, a brown jacket with a gray hood. *(See, People v McRay,* 51 NY2d 594.) Under these circumstances, the discrepancy between a description of a dark-skinned Hispanic and a black man was minimal. Similarly, it was not significant that defendant was standing on the north side of East 100th Street, particularly since Officer Gallagher testified that he saw no one else in the vicinity who matched the description. The only question then was whether Officer Gonzalez had to appear at the suppression hearing and confirm that he had relayed the information. The Court of Appeals, in *People v Petralia (supra),* concluded that he did not. Further, the record does not support the hearing court's determination that the undercover officer's reliability had not been adequately demonstrated.

Officer Gallagher testified that he had worked with Officer Gonzalez on numerous occasions and that, based upon his experience, the latter always transmitted reliable information. Finally, whether or not the currency recovered from defendant was buy money was entirely irrelevant to whether or not there was probable cause for the arrest. While this matter may properly be raised at trial, it is axiomatic that the validity of a search rests upon the facts surrounding the arrest and/or search and is not affected by what the search produces. Concur—Murphy, P. J., Ross, Milonas, Kassal and Rosenberger, JJ.